Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
500 Newport Center Drive Suite 610
Newport Beach, CA 92660
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lee Dozier, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| Gasco Inc., | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Lee Dozier ("Plaintiff") alleges the following:

## INTRODUCTION

1. Plaintiff brings this action against Gasco Inc. ("Defendant"), for unlawfully discriminating against Plaintiff because of his disability at the commercial real property commonly known address 2110 College Avenue in Modesto, California ("Property") where the College Market is located ("College Market").

2. Plaintiff seeks damages, injunctive, and declaratory relief, attorney's fees and costs pursuant to the Americans with Disabilities Act of 1990 ("ADA") and related California statutes

## PARTIES

3. Plaintiff is a natural person. At all times relevant to this Complaint, Plaintiff is and has been considered disabled.

4. Defendant is a California corporation with its principal address in Livermore, California. Defendant owns and/or operates the Property where the College Market is located.

## JURISDICTION

5. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. 1331 and 1343 for violations of the Americans with Disabilities Act of 1990.

6. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California law.

## VENUE

7. Venue is proper in this court pursuant to 28 U.S.C. 1391 and is founded on the fact that the Property is in this district and that Plaintiff's claims arose in this district.

## FACTUAL ALLEGATIONS

8. Plaintiff is over 79 years old.

9. Plaintiff's wife suffered from a stroke in 2022 and Plaintiff spends a large amount of his time caring for his wife.

10. Plaintiff is disabled. He used to work in construction building houses.

11. Construction work can cause a disability over time. One way is through repetitive strain injuries, which can occur when a person performs the same task over and over again, such as using a tool or lifting heavy objects. This can lead to pain and stiffness in the joints and muscles, and can eventually lead to a loss of function in the affected body part. Construction work can be physically demanding, and can put a lot of strain on the body. And this can lead to injuries such as sprains and strains, and can increase the risk of developing chronic conditions such as back pain or arthritis.

12. Plaintiff's past construction work took a toll on his body. As a result, Plaintiff has significant mobility issues, including a bad back.

13. Plaintiff utilizes a ride-on scooter to help get around on a day-to-day basis when he finds it otherwise too difficult to walk on his own.

14. Plaintiff's symptoms limit, some substantially, his major life activities.

15. A bad back can substantially limit a person's major life activities by making it difficult for them to engage in physical activities and maintain a good quality of life. For example, if a person has chronic back pain, it can make it difficult for them to perform physical activities, such as walking,

standing, or lifting objects. This can make it difficult for them to engage in activities that require physical exertion, such as sports or exercise, and can limit their ability to participate in activities that they enjoy.

16. Furthermore, a bad back can also cause emotional and mental distress. Chronic pain can lead to feelings of frustration, anxiety, and depression, which can affect a person's overall quality of life.

17. Plaintiff utilizes a ride-on scooter to help get around on a day-to-day basis when he finds it otherwise too difficult to walk on his own.

18. On April 1, 2023, Plaintiff personally visited the College Market located at the Property in Modesto, California. Plaintiff was there to purchase a soda and a lottery ticket.

19. While Plaintiff noticed that there were purportedly accessible parking spaces in the parking lot, there were no accessible parking spaces conveniently located near the College Market. The purportedly accessible parking spaces were on either end of a long strip mall, making it difficult for Plaintiff to access the College Market because of his mobility disabilities.

20. The availability of conveniently located disabled access parking spaces near a business is crucial for fostering an inclusive and accessible environment for all individuals, regardless of their physical abilities. By providing these designated spots in close proximity to a business entrance, a property owner can ensure that individuals with disabilities can comfortably and safely access the goods and services they need without having to navigate long distances. Placing disabled access parking spaces on either end of a strip mall can exacerbate mobility challenges and create barriers for those who already face limited access to public spaces.

21. Furthermore, there are additional barriers identified at the Property.

22. One pair of purportedly disabled access parking at the Property is not outlined with blue striping, the "NO PARKING" lettering is located outside the access aisle, is missing the required parking signs, and the striping on the parking space is too short, which is alleged to be less than 18' long.

23. It is important for a property's purportedly accessible parking spots to have blue striping, "NO PARKING" lettering, clear signage, and sufficient striping length for disabled access

parking spaces in order to create an accessible and inclusive environment for individuals with disabilities. Blue striping serves as a visual indicator, making it easy to identify the designated spaces and ensuring they are used exclusively by those who need them. The "NO PARKING" lettering, when appropriately placed within the access aisle, helps prevent the obstruction of the space and maintains its intended functionality. Clear signage informs drivers about the intended use of these spaces and the potential penalties for misuse, while sufficient striping length ensures that the parking space accommodates vehicles adapted for individuals with disabilities.

24. The access aisle at these spaces is also too steep, which is alleged to be over 2% in slope.

25. Another parking space has an access aisle that is not outlined with blue striping, has illegible/not visible "NO PARKING" lettering, and has an access aisle that is too steep, which is alleged to be greater than 2% at an inappropriate built-up curb ramp.

26. It is crucial that the accessible aisle to a supposedly accessible parking space is not too steep and less than 2% in slope because it can pose significant challenges for individuals with disabilities. A steep slope can make it difficult for people using mobility devices such as wheelchairs, walkers, or crutches to move freely and safely from their vehicles to the accessible path of travel.

27. One of the purportedly accessible parking spaces is also too steep, which is alleged to be over 2% in slope.

28. It is crucial that a purportedly accessible parking space is not too steep and over 2% in slope because it can make it difficult for individuals with disabilities to safely access the designated parking area. People using mobility devices such as wheelchairs, walkers, or crutches may find it challenging to navigate a steep slope, making it unsafe and challenging to get in and out of their vehicle

29. The entry door to the College Market has problems as well. Specifically, the ground beneath the door is not smooth and interrupted for the width of the door, which is alleged to be within 10 inches from the ground.

30. It is essential that the ground beneath the door is smooth and uninterrupted because it ensures accessibility for individuals with mobility devices such as wheelchairs, walkers, and crutches. Uneven surfaces can create significant barriers for people with disabilities, making it difficult for them to move freely and safely. Smooth surfaces, on the other hand, provide ease of mobility, allowing

individuals to move across the ground with minimal effort.

31. Moreover, the door is heavy, which is alleged to require more than 5 pounds of effort to operate.

32. It is crucial that doors are not too heavy as it ensures accessibility for people with disabilities. Heavy doors can be difficult to open for individuals with limited mobility, such as those with physical disabilities or elderly people. Doors requiring significant force to operate can also be challenging for individuals with conditions like arthritis, reducing their ability to move around freely.

33. The entry threshold at the door also has a high portion, which is alleged to be over half an inch high.

34. It is essential that the entry threshold at a door does not have a high portion because it can create significant barriers for individuals with disabilities. A high threshold can make it challenging for people using mobility devices, such as wheelchairs, walkers, or crutches, to enter a building independently and safely.

35. Inside College Market problems have also been identified. Specifically, the self-serve counter appears to be too high, which is alleged to be over 34 inches above the floor. Furthermore, the self-serve items, such as lids and straws, are too far to reach, which are alleged to be more than 48 inches from the floor.

36. It is crucial that a self-serve counter is not too high and that self-serve items, such as lids and straws, are not too far out of reach, as it ensures accessibility for individuals with disabilities. A high counter can make it challenging for people using mobility devices such as wheelchairs to access the self-serve items independently. Additionally, self-serve items that are too far out of reach can be difficult for individuals with limited mobility.

37. The sales counter is also too high, which is alleged to be over 34 inches high.

38. It is important that a sales counter is not too high because it promotes accessibility for individuals with disabilities. A high sales counter can create significant barriers for people with mobility devices, such as wheelchairs, walkers, or crutches, making it challenging for them to access the counter independently. It can also be challenging for people with limited mobility to conduct transactions at a high counter, reducing their ability to engage in everyday activities.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

39. Plaintiff is deterred from visiting this location because of the accessibility problems identified above, but would like to return in the future once Defendant ceases its discriminatory conduct.

40. The lack of appropriately accessible parking caused difficulty and discomfort to Plaintiff.

41. Plaintiff's mobility limitations make it very difficult for Plaintiff to travel long distances. Plaintiff relies on properly configured and conveniently placed accessible parking to run his daily errands for himself and his severely ill spouse.

42. College Market and the Property are public accommodations and business establishments.

43. The Property is believed to have undergone construction and/or alterations, structural repairs, or additions since July 1, 1970 and/or July 1, 1982.

44. Because of barriers at the Property, Plaintiff's access to the facilities, goods, and services at the Property and College Market was hampered, causing him difficulty, discomfort, and embarrassment.

45. Plaintiff has suffered and continues to suffer violations of his civil rights to full and equal enjoyment of goods, services, facilities, and privileges, and has suffered and will suffer embarrassment and humiliation.

### FIRST CAUSE OF ACTION

Violations of the Americans with Disabilities Act

42 U.S.C. § 12101, et seq.

Against all Defendants

46. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

47. Defendant has denied Plaintiff full and equal enjoyment and use of the goods, services, facilities, privileges, and accommodations of Defendant's Property and the College Market.

<u>Failure to Remove Architectural Barriers at an Existing Property</u>

48. Defendant has failed to remove architectural barriers, which are structural in nature,

where it is reasonably achievable, without much difficulty or expense, and the cost of removing the architectural barriers does not exceed the benefits under these particular circumstances.

49. For those barriers where it is not reasonably achievable to remove them, if any, Defendant has failed to make the goods, services, facilities, or accommodations available through alternative methods that are readily achievable.

### Failure to Design and Construct an Accessible Property

50. The improvements on the Property where the College Market is located are believed to have been designed and constructed, or both, after January 26, 1993, independently triggering access requirements under Title III of the ADA.

51. Defendant violated the ADA by failing to design and construct the facilities on the Property and at the College Market in a manner that was readily accessible to the physically disabled public, including Plaintiff, when it was structurally practical to do so.

### Failure to Make an Altered Facility Accessible

52. Plaintiff believes and alleges that the Property was modified after January 26, 1993, independently triggering access requirements under the ADA.

53. The ADA requires properties altered in a manner that affects or could affect its usability be made easily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

54. Defendant altered the Property in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – the maximum extent possible.

### Failure to Maintain Accessible Features

55. Defendant violated the ADA by failing to maintain in operable and working condition those features of the Property that are required to be readily accessible to and be usable by persons with disabilities.

56. Defendant's failure in maintaining the Property in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

57. The configuration and condition of Defendant's Property denied Plaintiff a public accommodation due to Plaintiff's disability.

58. It is readily achievable for Defendant to remove the architectural barriers.

59. Defendant does not have any legitimate business justification to excuse the condition and configuration of the Property.

60. Defendant's violations are the cause of suffering for Plaintiff.

61. Plaintiff prays for all relief available under the ADA, including injunctive relief that prohibits violations complained of herein, which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled from full and equal access to these public facilities, as well as attorney's fees, costs, and other expenses for these violations.

## SECOND CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51-53

Against all Defendants

62. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

63. As described above, Defendant intentionally discriminated against Plaintiff during his visit to the Property.

64. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code 51(f).

65. Defendants' acts and omissions are in violation of the Unruh Civil Rights Act, and have denied to Plaintiff his rights to "full and equal accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever."

66. Plaintiff was harmed.

67. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

68. As a result of the violation of Plaintiffs civil rights, Plaintiff is entitled to the rights and remedies of California Civil Code § 52, including a trebling of actual damages, minimum statutory damages, as well as reasonable attorneys' fees and costs, as allowed by statute, according to proof.

69. Plaintiff also seeks to enjoin Defendants from violating disabled persons' rights.

70. Although the plaintiff encountered frustration and difficulty by facing discriminatory

barriers, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this physical personal injury greater than the amount of the statutory damages.

### **PRAYER**

Plaintiff hereby prays for the following:

1. Injunctive relief compelling Defendant to cease the discrimination against disabled persons and remove all accessibility barriers that relate to Plaintiff's disability;

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense;

3. Attorney's fees pursuant to 42 U.S.C. 12205, Civil Code sections 52 and/or Code of Civil Procedure section 1021.5, expenses, and costs of suit;

4. Other relief that the court deems appropriate.

Dated: April 19, 2023

Law Office of Rick Morin, PC

_____
Richard Morin
Attorney for Plaintiff